**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOLOMON A. JONES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>EDUCATIONAL TESTING SERVICE,<br><br>　　　　　　Defendant. | Civil Action No. 23-20326 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Educational Testing Service's ("Defendant") Motion to Dismiss (ECF No. 29) Plaintiff Solomon A. Jones's ("Plaintiff") Amended Complaint (ECF No. 26). Plaintiff opposed (ECF No. 30), and Defendant replied (ECF No. 31). The Court has considered the parties' written submissions and reaches its decision without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendant's Motion to Dismiss is granted.

**I.　BACKGROUND**[1]

Plaintiff, an African-American male, is a Georgia-based standardized tests grader who was contracted to work for Defendant, a New Jersey-based testing company, as a Constructed Response Scoring Professional ("Rater"), from 2015 to 2021. (Am. Compl. 4-5, 8-9, ECF No. 26.) Plaintiff

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

worked under two testing programs administered by Defendant: the California Assessment of Student Performance and Progress ("CAASPP") and the Badger programs. (*Id.* at 5-6, 10.) During his employment, Plaintiff applied for several open positions and for promotion within the company, such as other lateral Rater positions and for a promotion to scoring leader ("SL"), but was denied each time.[2] (*Id.* at 6, 9.) In March 2021, Plaintiff inquired about the reasons for these denials in a series of e-mail messages with his program director and was told that automated grading and a higher-than-expected retention rate among existing project leaders had resulted in fewer available positions. (*Id.* at 9.)

In November 2021, Plaintiff's contracted-to employment period with Defendant ended, and he was terminated. (*Id.*) Defendant sent Plaintiff an e-mail message with a termination notice.[3] (*Id.*) This same e-mail message also contained an undisclosed list of supposedly terminated employees. (*Id.*) While Plaintiff was offered a chance to renew his contract at the conclusion of previous employment periods, Defendant did not extend an offer to renew his contract at the conclusion of this period. (*See id.*)

After his termination, on September 11, 2023, Plaintiff filed the original complaint, alleging a series of federal civil rights violations by Defendant. (*See generally* ECF No. 1.) On September 13, 2024, the Court dismissed Plaintiff's original complaint after Defendant initially moved to dismiss (the "September 2024 Opinion"). (ECF No. 25.) The Court also granted Plaintiff leave to amend his complaint. (*Id.*) Plaintiff timely filed an Amended Complaint on September 30, 2024, alleging, again, that he was denied promotions and ultimately terminated as a result of racial

---

[2] In the Amended Complaint, Plaintiff provides a list of Defendant's employees "who are not African-American males or African-Americans and who held a position of Scoring Leader in the CAASPP or Badger programs." (Am. Compl. 6.)

[3] At the time of termination, Plaintiff was 39 years old. (Am. Compl. 9.)

2

and age discrimination by Defendant. (*See generally* Am. Compl.) More specifically, Plaintiff alleges that Defendant intentionally discriminated against him: (1) based on his race by denying him new positions and failing to provide equal pay; and (2) based on his age and in retaliation for him seeking a promotion to the SL position. (*Id.*)

Defendant now moves to dismiss Plaintiff's Amended Complaint, arguing Plaintiff's claims are insufficiently pled. (*See generally* Def.'s Moving Br., ECF No. 29.) Plaintiff opposed (ECF No. 30), and Defendant replied (ECF No. 31). The motion is now ripe for review.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure[4] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When analyzing a Rule 12(b)(6) motion to dismiss, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the Court must accept as true all of a plaintiff's well pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Lastly, the Court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

---

[4] Unless otherwise stated, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

3

(quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Moreover, in considering a motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Finally, where a plaintiff proceeds pro se, the complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A pro se litigant, however, "is not absolved from complying with *Twombly* and the federal pleading requirements merely because [the litigant] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### III. <u>DISCUSSION</u>

Plaintiff's Amended Complaint reasserts some of the same claims previously set forth in his original complaint.[5] (*Compare* Compl. 3, ECF No. 1, *with* Am. Compl. 3.) Since the Court dismissed Plaintiff's Title VII, ADEA, and ADA claims with prejudice in its September 13, 2024

---

[5] Plaintiff cites a number of federal statutes in his Amended Complaint, including 42 U.S.C. § 1981 (Section 1981 of the Civil Rights Act of 1964) ("Section 1981"); 42 U.S.C. § 2000d, et seq. (Title VI of the Civil Rights Act of 1964) ("Title VI"); 42 U.S.C. § 2000e, et seq. (Title VII of the Civil Rights Act of 1964) ("Title VII"); 29 U.S.C. §§ 621-634 (the Age Discrimination in Employment Act of 1967) ("ADEA"); 42 U.S.C. §§ 6101-6107 (the Age Discrimination Act of 1975) ("ADA"). (Am. Compl. 3.)

Memorandum Opinion ("September 2024 Opinion") (Sept. 2024 Op. 5-7, ECF No. 24), the Court need not address those claims.[6] The Court, therefore, will only evaluate whether Plaintiff's Amended Complaint addresses the deficiencies as to his Section 1981 and Title VI claims and whether his additional claims of retaliation under the: (1) National Labor Relations Act ("NLRA"); (2) Fair Labor Standards Act ("FLSA"); (3) New Jersey Conscientious Employee Protection Act ("CEPA"); and (4) New Jersey Law Against Discrimination ("NJLAD") sufficiently state a claim.[7]

### A.  Section 1981 and the *McDonnell Douglas* Burden-Shifting Framework

In the Amended Complaint, Plaintiff, again, alleges that he was discriminated against based on his race. (*See generally* Am. Compl.) In the September 2024 Opinion, the Court dismissed Plaintiff's Section 1981 claim because "[he] fail[ed] to establish that his termination and lack of advancement occurred under circumstances that could give rise to an inference of discrimination." (Sept. 2024 Op. 8.)

---

[6] Despite Plaintiff's apparent attempts to reassert them, the Court will not address the claims previously dismissed with prejudice. Those claims are no longer viable in this or any other lawsuit. *See Progme Corp. v. Comcast Cable Commc'ns LLC*, No. 17-1488, 2017 WL 5070723, at *4 (E.D. Pa. Nov. 3, 2017) ("By its very nature, a dismissal with prejudice means that it is final and binding."); *Johnakin v. Berringer*, No. 19-3484, 2019 WL 4849609, at *1 (E.D. Pa. Sept. 30, 2019) ("[Plaintiff] may not reassert any claim dismissed with prejudice."); *Doyle v. Y Z Com. LLC*, No. 21-17257, 2021 WL 5882986, at *5 (D.N.J. Dec. 13, 2021) ("A dismissal with prejudice means that [p]laintiff will be precluded from filing any future suit against [d]efendants concerning the allegations in the [c]omplaint."). Plaintiff has not added any new factual allegations that would change the Court's prior ruling. (*Compare* Compl., *with* Am. Compl.) The Court, therefore, adopts its discussion in its September 2024 Opinion with respect to the claims dismissed with prejudice. (*See generally* Sept. 2024 Op.)

[7] The Court does not separately address Plaintiff's claims unrelated to the facts of this case under 18 U.S.C. § 3006A and 18 U.S.C. §§ 2510-2522, in which he requests relief regarding funding for the Federal Public Defender's Office and Governmental Usage of Confidential Informants. (Am. Compl. 12-14.) As previously noted in this Court's September 2024 Opinion, the Court finds that Plaintiff lacks standing to bring these claims. (*See* Sept. 2024 Op. 2 n.1.)

To set forth an employment discrimination claim under Section 1981, a plaintiff must adequately allege a prima facie case of discrimination at the pleading stage under the *McDonnell Douglas* burden-shifting framework. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 472 (3d Cir. 2024). Under the *McDonnell Douglas* framework, a plaintiff must plead that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The Third Circuit has, in turn, found that an inference of intentional discrimination is sufficiently pled when a plaintiff can show that "the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably." *LeCadre v. Att'y Gen. Pa.*, No. 23-2898, 2024 WL 2763829, at *2 (3d Cir. May 30, 2024) (citing *Jones v. Sch. Dist. of Phila.*, 198 F. 3d 403, 413 (3d Cir. 1999)); *Sarullo v. USPS*, 352 F.3d 789, 798 (3d Cir. 2003) ("The 'central focus' of the prima facie case 'is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'").

Here, Plaintiff's Amended Complaint fails to cure the deficiencies identified in the Court's September 2024 Opinion. Specifically, Plaintiff fails to plead a prima facie case of discrimination because he, again, fails to allege that the denial of promotions or his termination occurred under circumstances that would give rise to a reasonable inference of discrimination. Rather, Plaintiff asserts, in a conclusory manner, that Defendant intentionally discriminated against him by failing to promote him because of his race. (*See* Am. Compl. 10.) To support his claim, Plaintiff asserts that Defendant knew Plaintiff's race was African-American. (*Id.* at 5.) Defendant's awareness and knowledge of Plaintiff's race alone, however, are insufficient to support an inference that

Defendant failed to promote Plaintiff based on his race. *See Sarullo*, 352 F.3d at 798 (finding that Native American plaintiff failed to plausibly plead a Section 1981 retaliation claim when the only evidence of race discrimination consisted solely of plaintiff's own assertion that he was not rehired because he was Native American and that most of his supervisors knew that he was Native American).

In the Amended Complaint, Plaintiff adds allegations that there are a number of Defendant's employees "who are not African-American males or African-Americans and who held a position of S[L] [] in the CAASPP or Badger programs." (Am. Compl. 6.) But, the Amended Complaint is devoid of any allegations that any of these individuals were promoted to the position of SL over Plaintiff. Here, the Amended Complaint does not contain factual allegations from which the Court could ascertain whether other Defendant employees were hired directly into the position, or when they assumed their positions. In short, Plaintiff fails to allege sufficient facts showing that other Defendant employees similarly situated to Plaintiff were given raises or promotions during their employment with Defendant or that they were promoted to higher-paying Rater positions than Plaintiff.[8] As such, because Plaintiff fails to plausibly allege that other employees not in his protected class were treated more favorably, Plaintiff fails to adequately plead that he was intentionally discriminated against by Defendant's failure to promote him. (*See* Am. Compl. 9); *Dickerson v. N.J. Inst. of Tech.*, No. 19-8344, 2019 WL 6032378, at *7 (D.N.J. Nov. 14, 2019) (dismissing a plaintiff's race discrimination claim based on defendant-employer's failure to

---

[8] Plaintiff included a list of Defendant employees who are non-African Americans that held higher positions in the CAASPP or Badger programs, but fails to plead that they were promoted or given raises since starting at Defendant. (*See* Am. Compl. 6-7.) In other words, Plaintiff fails to plead facts to indicate whether these other employees were similarly situated to Plaintiff, but were promoted or given raises.

7

promote because the plaintiff failed to allege any facts to indicate what the other hired employees' qualifications were or whether they were similarly situated to the plaintiff).

As such, because Plaintiff fails to adequately allege that other employees outside his protected class were treated more favorably, Plaintiff fails to state an employment discrimination claim based on the denial of promotions. *See Sarullo*, 352 F.3d at 798 (finding plaintiff cannot establish that employer's failure to rehire him raised an inference of employer's discriminatory animus where plaintiff did not allege that other employees not in plaintiff's protected class were rehired); *Feng v. Univ. of Del.*, 785 F. App'x 53, 56 (3d Cir. 2019) ("[W]hile Plaintiff's discrimination claim suffers from several infirmities, one primary flaw is that he has not established a prima facie case since he, inter alia, has failed to show he was treated differently than similarly situated [colleagues] who were not members of his protected class.") (citing *Feng v. Univ. of Del.*, No. 16-664, 2018 WL 1462224, at *1 (D. Del. Mar. 23, 2018)). The Court, accordingly, dismisses Plaintiff's Section 1981 claim.

### B.  Title VI and the *McDonnell Douglas* Burden-Shifting Framework

Next up is Plaintiff's claim for violations of Title VI. (Am. Compl. 3.) In the September 2024 Opinion, the Court dismissed Plaintiff's Title VI claim because he failed to allege sufficient facts to raise an inference of discrimination. (Sept. 2024 Op. 10.)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To establish a prima facie Title VI violation, the plaintiff must sufficiently plead[:] (1) that there is racial or national origin discrimination; and (2) that the entity engaging in discrimination is receiving federal financial assistance." *N.J. Sand Hill Band of Lenape &*

*Cherokee Indians v. Corzine*, No. 09-683, 2010 WL 2674565, at *15 (D.N.J. June 30, 2010) (citing *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993)). With regard to the first prong of the test, discrimination claims brought under Title VI are "governed by the same framework as those under other federal civil rights laws such as Title VII, which covers employment discrimination claims." *Feng*, 785 F. App'x at 55. Accordingly, courts apply the same *McDonnell Douglas* prima facie test for Title VI claims that they apply when determining the pleading sufficiency of a Title VII or Section 1981 claim. *See id.*; *Hankins v. Temple Univ.*, 829 F.2d 437, 440-41 (3d Cir. 1987) (applying *McDonnell Douglas* framework to a case brought under both Title VI and Title VII); *NAACP v. Med. Ctr., Inc.*, 657 F.2d 1322, 1336 (3d Cir. 1981) (*en banc*) (noting that the Third Circuit permits plaintiffs to "establish discrimination through effects under both Title VI and Title VII").

Here, the Amended Complaint fails to cure the deficiencies identified in the September 2024 Opinion with respect to Plaintiff's Title VI claim. That is, the Amended Complaint fails to allege facts to raise an inference of discrimination, which is, again, fatal to Plaintiff's Title VI claim. (*See generally* Am. Compl.) While establishing this inference "is not a heavy burden," a plaintiff must at least allege that he suffered some adverse action under circumstances suggesting that such action was related to his membership in a protected group. *Feng*, 785 F. App'x at 55 (citing *McDonnell Douglas*, 411 U.S. at 802). Here, Plaintiff, again, fails to allege *any* facts, actions, or words that could plausibly raise a suggestion of discriminatory treatment on the basis of his race. (*See generally* Am. Compl.) Accordingly, his Title VI claim is insufficiently pled and dismissed.

9

### C. Retaliation Claims (NLRA, FLSA, CEPA, and NJLAD)

In the Amended Complaint, Plaintiff brings additional retaliation claims under the NLRA, FLSA, CEPA, and NJLAD. (Am. Compl. 3.)

*1. NLRA*

Section 7 of the NLRA gives employees the right to engage in concerted activities for the purposes of mutual aid and protection, 29 U.S.C. § 157, and Section 8 provides employees the right to be free from unfair labor practices, 29 U.S.C. § 158. When a plaintiff asserts a cause of action that implicates protected activity under Section 7 of the NLRA, or prohibited conduct under Section 8 of the NLRA, the cause of action is preempted under the principles of "*Garmon* preemption." *Violas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959)). The National Labor Relations Board has exclusive jurisdiction over such proceedings. *Garmon*, 359 U.S. at 244-45. In other words, "neither state nor federal courts possess jurisdiction over claims" based on "activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Breininger v. Sheet Metal Workers Intern. Ass'n Loc. Union No. 6*, 493 U.S. 67, 74 (1989); *Wis. Dep't of Indus., Lab. & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986); *see also Voilas*, 170 F.3d at 378 ("*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings.").

Here, even assuming that Plaintiff may bring an NLRA retaliation claim in this Court, Plaintiff still fails to allege that he engaged in any "concerted activities." The "touchstone" of "concerted activities" is "whether the employee intends to induce group activity or whether the employee's action bears some relation to group action in the interest of the employees." *MCPC, Inc. v. N.L.R.B.*, 813 F.3d 475, 484 (3d Cir. 2016). "[T]he benchmark for determining whether an employee's conduct falls within the broad scope of concerted activity is the intent to induce or

effect group action in furtherance of group interests." *Id.* at 486. The Amended Complaint fails to contain any allegations that Plaintiff attempted to induce any group activity. (*See generally* Am. Compl.) Rather, the Amended Complaint suggests that the conduct was related to his own self-interest. (*See id.*) As such, Plaintiff fails to adequately allege a claim under the NLRA. The Court, therefore, dismisses Plaintiff's NLRA claim.

    2.    *FLSA and NJLAD*

Under the FLSA, it is unlawful to "discharge or in any other manner discriminate against an[] employee because [that] employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." *See* 29 U.S.C. § 215(a)(3). The anti-retaliation provision of the FLSA, is interpreted liberally and protects a wide range of actions. *See Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir. 1987).

"[T]o establish a prima facie case of retaliation under the FLSA, a plaintiff must show: (1) participation in an activity protected by the FLSA; (2) an adverse employment action taken by the employer; and (3) a causal connection between the protected activity and the employer's adverse action." *Alberto v. City of Newark, N.J.*, No. 24-648, 2024 WL 4533329, at *2 (D.N.J. Oct. 21, 2024) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). The FLSA prohibits an employer from discharging or otherwise discriminating "against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Given the remedial purpose of the FLSA, the Third Circuit "has broadly interpreted protected conduct under Section [§ 215(a)(3)]." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 270 (3d Cir. 2022). As such, an employee is not required to formally file a complaint. *See id.* at 269. Courts have found an oral complaint, *see id.* (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011)), and an unofficial internal

complaint, *Buchspies v. Pfizer, Inc.*, No. 18-16083, 2019 WL 5078853, at *5 (D.N.J. Oct. 10, 2019), sufficient to satisfy this requirement. But any complaint is not deemed "filed" until "'a reasonable, objective person would have understood the employee' to have 'put the employer on notice that [the] employee is asserting statutory rights under the [Act].'" *Kasten*, 563 U.S. at 14.

Similarly, to adequately plead a retaliation claim under the NJLAD, the plaintiff must show that: "(1) []he engaged in a protected activity known to the defendant; (2) []he was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). An individual is "engage[d] in . . . protected activity" when he "opposes any practice rendered unlawful under the [NJ]LAD." *Id.* (citation omitted).

Here, the Amended Complaint fails to sufficiently allege that Plaintiff was engaged in a protected activity known to Defendant. The gravamen of Plaintiff's FLSA and NJLAD claims is that he was terminated because he inquired as to why he was not promoted to SL. Even assuming, however, that Plaintiff participated in a protected activity under the FLSA and NJLAD by inquiring about his lack of promotion, the Court finds that he has not alleged facts to support an inference of temporal proximity or any other circumstantial facts suggesting a causal link indicating that his termination was in retaliation for his inquiry. The Amended Complaint fails to raise any factual allegations that would support an inference that Defendant terminated Plaintiff because of this inquiry. The only allegation in the Amended Complaint that surrounds Plaintiff's termination is that his employment with Defendant was terminated along with "an undisclosed list" of other Defendant employees "at the end of that seasonal grading period." (Am. Compl. 9.) As such,

Plaintiff fails to adequately allege retaliation claims under FLSA and NJLAD. The Court, accordingly, dismisses Plaintiff's FLSA and NJLAD claims.

        3.      CEPA

It is well settled under the CEPA that an employer may not take retaliatory action against an employee who "objects to, or refuses to participate in any activity, policy[,] or practice, which the employee reasonably believes . . . is incompatible with a clear mandate of public policy concerning [] public health, safety or welfare[.]" N.J. Stat. Ann. § 34:19-3(c). Carrying out this statutory mandate, the New Jersey Supreme Court has prescribed that, to state a claim under the CEPA, a plaintiff must adequately allege that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity . . . ; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003) (citing *Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999)).

Here, Plaintiff fails to adequately allege a CEPA retaliation claim. In essence, the Amended Complaint is devoid of any factual allegations that Defendant violated any law, rule, or regulation, or that Plaintiff objected to any such practice. Although Plaintiff now alleges in his Amended Complaint that Defendant did not promote him because of his age[9] and race (Am. Compl. 10, 11), he fails to allege that he complained to Defendant regarding this conduct during his employment. This is fatal to his CEPA claim. *Clayton v. City of Atlantic City*, 722 F. Supp. 2d 581, 589 (D.N.J.

---

[9] It is not even clear whether Plaintiff is alleging that he was retaliated against because he was too young or too old. (*See generally* Am. Compl.)

13

2010) ("Without alleging that a [plaintiff] performed a whistle-blowing activity, [plaintiff']s [CEPA] claim cannot pr[o]cede."). The Court, accordingly, dismisses Plaintiff's CEPA claim.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff will be allowed one final opportunity to file a second amended complaint. An order consistent with this Memorandum Opinion will be entered.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE