**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOLOMON A. JONES,<br><br>            Plaintiff,<br><br>  v.<br><br>EDUCATIONAL TESTING SERVICE,<br><br>            Defendant. | Civil Action No. 23-20326 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendant Educational Testing Service's ("Defendant") Motion to Dismiss (ECF No. 37) Plaintiff Solomon A. Jones's ("Plaintiff") Second Amended Complaint (the "SAC") (ECF No. 34). Plaintiff opposed (ECF No. 38) and Defendant replied (ECF No. 39). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted.

**I. BACKGROUND**

  **A. Factual Background**[1]

  Plaintiff, an African-American male, is a Georgia-based standardized test grader, who was employed by Defendant as a "Constructed Response Scoring Professional" (a "Rater") from February 2015 through November 2021. (SAC 4-5, 11, 13, ECF No. 34.) Plaintiff worked as a Rater under two testing programs administered by Defendant: (1) the California Assessment of

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Student Performance and Progress (the "CAASPP"); and (2) the Badger program. (*Id.* at 5, 13.) During the course of his employment, Plaintiff applied internally to several open positions, including other similar Rater positions, but was denied each time. (*Id.* at 6.) In March 2021, Plaintiff sent an e-mail message to the director of the CAASPP program to inquire about the criteria for a scoring leader ("SL") position, a promotion from Plaintiff's Rater position, and to ask why he had never seen an SL position posting and why he had not been asked if he was interested in applying for an SL position.[2] (*Id.* at 5, 11.) In response to Plaintiff's inquiry, the director of the CAASPP program replied that "there was a sufficient amount of SLs returning" and that "the increased number of works being graded by automated processes had eliminated the need to promote any Raters to SLs." (*Id.* at 11-12.)

On November 10, 2021, at the end of the CAASPP grading period, Defendant sent an e-mail message to Plaintiff terminating the employment contract it had with Plaintiff. (*Id.* at 12.) Plaintiff alleges that the e-mail message terminating his employment had "an undisclosed list of supposedly terminated employees." (*Id.*) Although Plaintiff's employment for "seasonal grading period[s]" had "recycle[d]" for the previous seven years, Plaintiff was not given an opportunity to renew his contract again.[3] (*Id.*) The termination e-mail message, however, provided recipients with "a small time-window to apply to a similar position with another company for 'all' purportedly on the 'undisclosed' list." (*Id.* at 14.)

---

[2] Plaintiff also included a list of Defendant's employees "who are either non-African-American or non-African-American males and who were similarly situated as . . . Plaintiff as a Rater, and also held a position of . . . []SL[] in the CAASPP or Badger programs[.]" (SAC 8-10.)

[3] At the time of his termination, Plaintiff was 39 years and 4 months old. (SAC 12.)

2

B.  **Procedural Background**

In September 2023, Plaintiff filed his original Complaint, alleging a series of federal civil rights violations by Defendant. (*See generally* Compl., ECF No. 1.) On September 13, 2024, after Defendant filed a motion to dismiss, the Court dismissed Plaintiff's original Complaint (the "September 2024 Opinion"). (*See generally* Sep. 13, 2024, Mem. Op., ECF No. 24; Sep. 13, 2024, Order, ECF No. 25.) Plaintiff, having been afforded an opportunity to amend, timely filed his first Amended Complaint. (*See generally* First Am. Compl., ECF No. 26.) Defendant once again moved to dismiss, and the Court subsequently granted its motion (the "May 2025 Opinion"). (*See generally* May 30, 2025, Mem. Op., ECF No. 32; May 30, 2025, Order, ECF No. 33.) The Court afforded Plaintiff one final opportunity to amend his complaint. (*See* May 30, 2025, Mem. Op. 14.)

On June 12, 2025, Plaintiff filed the SAC, which alleges a variety of employment discrimination and retaliation claims against Defendant.[4] (*See generally* SAC.) Defendant now moves to dismiss the SAC with prejudice. (*See generally* Def.'s Moving Br., ECF No. 37.) Plaintiff opposed (*see generally* Pl.'s Opp'n Br., ECF No. 38), and Defendant replied (*see generally* Def.'s Reply Br., ECF No. 39).

---

[4] Plaintiff also alleges that 18 U.S.C. § 3006A "is unconstitutional because it creates a financial conflict of interest between a public defender and the prosecutor, violating the [D]ue [P]rocess [C]lause of both the 5th [A]mendment (federal public defender) and the 14th [A]mendment (state public defender)." (SAC 15 (labeled as paragraph 13).) Plaintiff appears to acknowledge, however, that this claim is not asserted against and has nothing to do with the named Defendant in this matter. (*See id.* ("The Defendant need only respond to paragraphs 1 through 12.").)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure[5] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

## III. **DISCUSSION**

The SAC once again reasserts some of the same claims previously set forth in Plaintiff's original Complaint and First Amended Complaint.[6] (*Compare* SAC 3 *with* Compl. 3 *and* First Am. Compl. 3.) As previously noted in its May 2025 Opinion, the Court need not address Plaintiff's Title VII, ADEA, and ADA claims, as the Court dismissed those claims with prejudice in its September 2024 Opinion.[7] The Court, therefore, will only evaluate whether Plaintiff's SAC adequately pleads claims under: (1) Section 1981; (2) Title VI; (3) the FLSA; (4) NJCEPA; and (5) the NJLAD.[8] The Court first turns to Plaintiff's Section 1981 claim.

---

[6] Specifically, Plaintiff cites a number of federal statutes in the SAC: (1) 42 U.S.C. § 1981 ("Section 1981"); (2) 42 U.S.C. § 2000d, *et seq.*, Title VI of the Civil Rights Act of 1964 ("Title VI"); (3) 29 U.S.C. §§ 201-219 under the Fair Labor Standards Act (the "FLSA"); (4) 42 U.S.C. § 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"); (5) 29 U.S.C. §§ 621-634, the Age Discrimination in Employment Act of 1967 ("ADEA"); and (6) 42 U.S.C. §§ 6101-6107, the Age Discrimination Act of 1975 ("ADA"). (SAC 3.) Plaintiff also cites to and alleges violations of the New Jersey Conscientious Employee Protection Act ("NJCEPA") and the New Jersey Law Against Discrimination ("NJLAD"). (*Id.* at 15.)

[7] Despite Plaintiff's attempt to once again reassert these claims, the Court will not address the claims previously dismissed with prejudice, as those claims are no longer viable in this or any other lawsuit. *See Progme Corp. v. Comcast Cable Commc'ns LLC*, No. 17-1488, 2017 WL 5070723, at *4 (E.D. Pa. Nov. 3, 2017) ("By its very nature, a dismissal with prejudice means that it is final and binding."); *Johnakin v. Berringer*, No. 19-3484, 2019 WL 4849609, at *1 (E.D. Pa. Sep. 30, 2019) ("[Plaintiff] may not reassert any claim dismissed with prejudice."); *Doyle v. Y Z Com. LLC*, No. 21-17257, 2021 WL 5882986, at *5 (D.N.J. Dec. 13, 2021) ("A dismissal with prejudice means that [p]laintiff will be precluded from filing any future suit against [d]efendants concerning the allegations in the [c]omplaint."). The Court, therefore, adopts its discussion from its September 2024 Opinion and its reasoning from its May 2025 Opinion with respect to the claims previously dismissed with prejudice. (*See generally* Sep. 13, 2024, Mem. Op.; May 30, 2025, Mem. Op.)

[8] The Court does not separately address Plaintiff's claim under 18 U.S.C. § 3006A, which is unrelated to the facts of this case. As this Court has previously noted, Plaintiff lacks standing to bring such a claim. (*See* Sep. 13, 2024, Mem. Op. 2 n.1; May 30, 2025, Mem. Op. 5 n.7.)

A.     **Section 1981 Claim**

Plaintiff alleges that he was discriminated against based on his race in violation of Section 1981. (*See generally* SAC.) The Court once more finds that Plaintiff has failed to adequately allege a discrimination claim under Section 1981.[9]

"To state a claim under [S]ection 1981, a plaintiff must allege facts supporting: '(1) that [the] plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated by the statute[.]" *Bailey v. Millenium Grp. of Del.*, No. 21-1752, 2022 WL 3754617, at *3 (3d Cir. Aug. 20, 2022) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).

In both its September 2024 Opinion and May 2025 Opinion, the Court dismissed Plaintiff's Section 1981 claim because he "fail[ed] to adequately allege that other employees outside his protected class were treated more favorably, [and therefore] Plaintiff fail[ed] to state an employment discrimination claim[.]" (May 30, 2025, Mem. Op. 8; *see also* Sep. 13, 2024, Mem. Op. 8 (dismissing Section 1981 claim because "Plaintiff fail[ed] to establish that his termination and lack of advancement occurred under circumstances that could give rise to an inference of discrimination").) In the SAC, Plaintiff fails to address those deficiencies. Instead, Plaintiff alleges that: (1) Defendant knew that Plaintiff was African-American (SAC 8); (2) a number of

---

[9] In his opposition (*see* Pl.'s Opp'n Br. 9-10), Plaintiff appears to argue that his Section 1981 claim is based on purported retaliation, and not solely discrimination. Plaintiff's SAC, however, alleges that Defendant "intentionally discriminated against . . . Plaintiff on the basis of race" in violation of Section 1981 and Title VI. (SAC 14.) It is clear, therefore, that Plaintiff alleges only discrimination, and not retaliation, under his Section 1981 claim. (*See id.*) Plaintiff cannot now attempt to amend the SAC to assert a new theory for his claim. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (internal quotation marks and citation omitted)); *see also Wealth v. Fox Rothschild LLP*, No. 23-3194, 2024 WL 3371354, at *6 n.11 (D.N.J. July 11, 2024) ("It is well settled that [p]laintiffs cannot amend their [c]omplaint through an opposition brief." (citation omitted)).

Defendant's employees "who are either non-African-American or non-African-American males and who were similarly situated as the Plaintiff as a Rater, . . . held a position of . . . []SL[] in the CAASPP or Badger Programs" (*id.* at 8-9); (3) Plaintiff had a lower hourly-rate than the average Rater (*id.* at 11); (4) Plaintiff believed he was "being discriminated against due to being an African-American male" (*id.* at 12); and (5) Defendant failed to promote Plaintiff to the SL position, even after he inquired about it (*id.*).

First, Defendant's awareness that Plaintiff is African-American alone is not enough to support his discrimination claim. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (finding that the assertion that defendant knew of and chose not to rehire plaintiff because he was Native American was, by itself, not sufficient without more facts regarding whether employees who were not Native American were rehired by plaintiff). Further, although Plaintiff provides a list of employees he contends are similarly situated and not members of his protected class, he has failed to allege that any of these individuals were promoted to the position of SL over Plaintiff specifically. Rather, the list itself appears to contain information on individuals: (1) who were promoted from Rater to SL in 2016 or 2017, well before Plaintiff raised the inquiry of an SL promotion in 2021; (2) who were *demoted* from SL to Rater; and (3) who began employment with Defendant as an SL and did not start as a Rater. (*See* SAC 9-10.) This is not sufficient to adequately allege that Defendant intentionally discriminated against Plaintiff by failing to promote him when others similarly situated to him were promoted. *See, e.g., Dickerson v. N.J. Inst. of Tech.*, No. 19-8344, 2019 WL 6032378, at *7 (D.N.J. Nov. 14, 2019) (dismissing claims after finding that "there are no well-pleaded facts establishing that 'despite [plaintiff's] qualifications, [plaintiff] was rejected' for a promotion . . . [or] that [defendant] sought and hired individuals in the employment group that matched [plaintiff's] qualifications"). Lastly, while Plaintiff alleges he

received a lower hourly rate than the median for the position he held, Plaintiff fails to allege facts that tie his lower rate to any discrimination on the part of Defendant. (*See generally* SAC.)

Based on the foregoing, the Court finds that Plaintiff has failed to allege a discrimination claim pursuant to Section 1981. Plaintiff's Section 1981 claim is, accordingly, dismissed.

### B.  Title VI Claim

Plaintiff asserts a discrimination claim pursuant to Title VI. The Court finds that Plaintiff has also failed to adequately allege a Title VI discrimination claim.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI "prohibits intentional discrimination based on race in any program that receives federal funding." *Bethea v. Roizman*, No. 11-254, 2012 WL 2500592, at *15 (D.N.J. June 27, 2012) (first citing *Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001); and then citing *S. Camden Citizens in Action v. N.J. Dep't of Environ. Protect.*, 274 F.3d 771 (3d Cir. 2001)); *see also Alexander*, 532 U.S. at 280 (noting Title VI prohibits "only intentional discrimination"). To plead a Title VI claim, a plaintiff must "plead sufficiently[:] (1) that there is racial or national original discrimination[;] and (2) that the entity engaging in discrimination is receiving federal financial assistance." *N.J. Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, No. 09-683, 2010 WL 2674565, at *15 (D.N.J. June 30, 2010) (citing *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993)).

Here, as discussed above in the context of Plaintiff's Section 1981 claim, Plaintiff fails to plead facts sufficient to establish even an inference of discrimination. *See Wysocki v. Wardlaw-Hartridge Sch.*, No. 21-14132, 2023 WL 2728807, at *6 (D.N.J. Mar. 31, 2023) ("In

order to move forward with their Title VI claim, [p]laintiffs 'must raise at least an inference of discrimination[.]'" (second alteration in original) (citation omitted)). While establishing an inference of discrimination "is not a heavy burden[,]" Plaintiff is still required to allege facts regarding his suffering of some adverse action related to his race. *See Xu Feng v. Univ. of Del.*, 785 F. App'x 53, 55 (3d Cir. 2019).

Additionally, Plaintiff has not alleged facts to establish that Defendant received federal funding for the purpose of providing employment. *See Eisenberg v. Nat'l Dance Inst.*, No. 22-4521, 2023 WL 2966945, at *8 (D.N.J. Apr. 17, 2023) ("Title VI is limited to prohibiting intentional discrimination in a federally funded program, which, importantly, applies only to programs 'where a primary objective of the Federal financial assistance is to provide employment.'" (citation omitted)). Plaintiff peppers references to various funding that Defendant allegedly received and generally asserts that "Defendant received financial assistance." (SAC 10-11, 14.) The SAC, however, fails to allege the purpose of this funding, as is required to sustain a Title VI claim. *See Eisenberg*, 2023 WL 2966945, at *8 (dismissing complaint where plaintiffs "pepper references to [defendant] receiving federal funding throughout the [c]omplaint, . . . but do not once allege and specify facts that demonstrate that the 'primary objective of the Federal financial assistance is to provide employment'" (citing 42 U.S.C. § 2000d-3)).

Based on the foregoing, the Court finds that Plaintiff has failed to allege a claim pursuant to Title VI. Plaintiff's Title VI claim is, therefore, dismissed.

### C. Retaliation Claims Under the FLSA, NJCEPA, and NJLAD

Plaintiff asserts retaliation claims pursuant to the FLSA, NJLAD, and NJCEPA. Plaintiff also fails to adequately plead these claims.

### *1.      FLSA and NJLAD*

Under the FLSA, it is unlawful to "discharge or in any other manner discriminate against an[] employee because [that] employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ." 29 U.S.C. § 215(a)(3). To adequately allege an FLSA retaliation claim, "a plaintiff must plead facts demonstrating[:] (1) that the employee engaged in a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Buchspies v. Pfizer, Inc.*, No. 18-16083, 2019 WL 5078853, at *5 (D.N.J. Oct. 10, 2019) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). Given the remedial purpose of the FLSA, the Third Circuit "has broadly interpreted protected conduct under Section [215(a)(3)]." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269-70 (3d Cir. 2022). As such, an employee may not need to formally file a complaint, *see id.* at 270-71, as courts have found both an oral complaint and an unofficial internal complaint to be sufficient, *see id.* at 269 (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011)); *Buchspies*, 2019 WL 5078853, at *5.

Similarly, to adequately plead an NJLAD retaliation claim, the plaintiff must allege that: "(1) []he engaged in a protected activity known to the defendant; (2) []he was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). An individual is "engage[d] in . . . protected activity" when he "opposes any practice rendered unlawful under the [NJ]LAD." *Id.* (citations omitted).

Here, the SAC fails to address the deficiencies previously identified by this Court. (*See generally* SAC; May 30, 2025, Mem. Op. 12.) Plaintiff's FLSA and NJLAD retaliation claims rest on the notion that Plaintiff was terminated because he inquired as to why he was not promoted to SL. (*See* SAC 14-15.) Even assuming this complaint was "protected activity," Plaintiff still does not allege facts supporting an inference of a causal link between his inquiry about a promotion to SL in March 2021 and his termination at the end of the grading period in November 2021. (*See id.* at 11-12; *see also* May 30, 2025, Mem. Op. 12 (noting that Plaintiff's Amended Complaint failed to "allege[] facts to support an inference of temporal proximity or any other circumstantial facts suggesting a causal link indicating that his termination was in retaliation for his inquiry").) Plaintiff alleges that: (1) "[a]t no point before or during the last seasonal grading period did anyone from [Defendant] indicate that the project would be terminated[;]" (2) "[a]ll concurrent emails and notifications indicated that seasonal grading period would recycle as it had been for the past seven years"; and (3) "[i]t was only on the day of termination when the Plaintiff was notified that his contract with Defendant was terminated." (SAC 12.) These allegations, however, do not create an inference of retaliation based on an informal complaint raised approximately *eight months* before his termination.[10] *See, e.g., Cohen*, 419 F. Supp. 3d at 852 (finding "temporal proximity [was] insufficient to establish a causal link" where there was a delay of six months between the alleged protected activity and plaintiff's termination). Further, Plaintiff's reliance on the e-mail message terminating his employment contract including "an undisclosed list of supposedly terminated employees" does not help his cause. (*See* SAC 12.) Rather, the "undisclosed list" Plaintiff mentions suggests that Plaintiff was not the only individual terminated at the end of this standard grading

---

[10] The Court also finds it noteworthy that Plaintiff's termination coincided with "the end of the CAASPP grading period." (SAC 12.)

11

period. (*See id.*) Even further, the termination e-mail message "included a small time-window to apply to a similar position with another company for 'all' purportedly on the 'undisclosed' list[,]" giving Plaintiff a potential other job opportunity along with the other "undisclosed list" of e-mail recipients. (*Id.* at 14.)

The Court, therefore, finds that Plaintiff fails to adequately plead the elements of a retaliation claim under both the FLSA and NJLAD. Plaintiff's FLSA and NJLAD claims are, accordingly, dismissed.

### 2. NJCEPA

Under NJCEPA, an employer may not take retaliatory action against an employee who "[o]bjects to, or refuses to participate in any activity, policy[,] or practice, which the employee reasonably believes . . . is in violation of a law . . . or . . . is incompatible with a clear mandate of public policy concerning [] public health, safety[,] or welfare[.]" N.J. Stat. Ann. § 34:19-3(c). To state a claim under NJCEPA, a plaintiff must adequately allege that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity as described in [N.J. Stat. Ann. §] 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003) (citation omitted).

Plaintiff's SAC fails to correct the deficiencies identified in the Court's May 2025 Opinion with respect to Plaintiff's NJCEPA claim. (*See* May 30, 2025, Mem. Op. 13 (noting Plaintiff "fail[ed] to allege that he complained to Defendant regarding th[e] conduct [of Defendant purportedly failing to promote Plaintiff because of his age and race] during his employment").) Plaintiff again fails to allege facts regarding any purported whistle-blowing activity. (*See generally* SAC.) Without such allegations, Plaintiff's NJCEPA claim must be dismissed. *See Clayton v. City*

*of Atl. City*, 722 F. Supp. 2d 581, 589 (D.N.J. 2010) ("Without alleging that [plaintiff] performed a whistle-blowing activity, [plaintiff's] claim cannot [proceed]."). The Court, accordingly, dismisses Plaintiff's NJCEPA claim.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted.[11] Plaintiff's SAC is dismissed with prejudice.[12] The Court will issue an Order consistent with this Memorandum Opinion.

Dated: *February 3,* 2026

                                                 MICHAEL A. SHIPP
                                                 UNITED STATES DISTRICT JUDGE

---

[11] The Court need not address the remaining arguments Defendant raised in support of its Motion to Dismiss.

[12] Plaintiff has been given multiple opportunities to amend his complaint and provide sufficient factual support for his claims. Because Plaintiff has once again failed to sufficiently plead any claim against Defendant and continues to advance the same arguments and allegations that the Court has rejected or dismissed (*see generally* SAC), the Court finds that permitting Plaintiff any additional opportunities to amend would be futile. *See Baker v. Ahsan*, 785 F. App'x 904, 906 (3d Cir. 2019) (finding that the "[d]istrict [c]ourt did not err in holding further amendment would be futile" where the district court generously construed plaintiff's complaint and gave plaintiff multiple opportunities to amend his complaint); *Smith v. DeJoy*, No. 21-706, 2025 WL 240899, at *2 (W.D. Pa. Jan. 17, 2025) ("When a *pro se* plaintiff has been afforded multiple opportunities to cure defects of pleading and additional opportunity to amend appears to be futile, dismissal with prejudice and without leave to amend may be appropriate." (citing *Singleton v. Harbor Freight Manager*, No. 23-2889, 2024 WL 1406420, at *1 (3d Cir. Apr. 2, 2024))); *Harris v. Corbett*, No. 12-01, 2014 WL 580150, at *8 (W.D. Pa. Feb. 12, 2014) ("Moreover, 'if the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied.'" (citation omitted)), *aff'd*, 578 F. App'x 105 (3d Cir. 2014).